IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-00962-REB-PAC

CORAZON FOX, and
JOHNEARL FOX

      Plaintiffs,

v.

VITAMIN COTTAGE NATURAL GROCERS,
KEMPER Isely,
HEATHER Isely,
TIM KING,
PAT FRITZLER, and
LINDA BENAVIDAZ,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Patricia A. Coan, United States Magistrate Judge

    *Pro se* plaintiffs Corazon Fox and Johnearl Fox allege discrimination under 42 U.S.C. §§1981, 1983, 1985 and 2000a, §1986, and the Americans with Disabilities Act; they also bring state law claims of defamation, obstruction of justice, and outrageous conduct; and they ask for the Attorney General's intervention under 42 U.S.C. §2000a-3.  A May 31, 2005 Order of Reference referred this matter to the undersigned for pretrial case management and for recommendations on dispositive motions.  The matters now before the Court are : Defendants' Motion to Dismiss Plaintiffs' Complaint Without Prejudice Pursuant to Fed.R. Civ.P. 4(m), filed October 17, 2005, Doc. # 39, and Defendants' Motion to Dismiss Pursuant to Fed. R. Civ.P. 12(b)(6), filed December 19, 2005, Doc. # 64.  The motions have been fully briefed and I have determined that oral argument would not be of material assistance.

## I. Background

Seven claims for relief are asserted in the amended complaint.  They are : (1) violations of 42 U.S.C. §§1981, 1983, 1985, and 2000a by all defendants; (2)  violation of 42 U.S.C. §1986 by Vitamin Cottage, Kemper Isely and Heather Isely; (3) violation of the Americans with Disabilities Act [ADA], 42 U.S.C. §12182 by Vitamin Cottage and Kemper Isely; (4) defamation under Colo. Rev. Stat. §18-13-105 by all defendants; (5) obstruction of justice in violation of 18 U.S.C. §1505 by all defendants; (6) outrageous conduct under Colorado state law against all defendants; and (7)  for intervention by the Attorney General, pursuant to 42 U.S.C. §2000a-3.  Plaintiffs seek damages for "deprivation of nutritional education and shopping rights," emotional distress, pain, suffering, humiliation, injury to reputation, inconvenience, loss of enjoyment of life, "other bereavements" and injury to plaintiff Corazon Fox's pre-existing psychological disability.  See Amended Compl. at 3.

After some difficulties with service[1], I ordered service by the United States Marshal. Following the filing of returns of service, I set a scheduling conference for December 15, 2005, which was reset to February 27, 2006 at plaintiffs' request. Plaintiffs then unsuccessfully moved  to stay the proceedings, and failed to appear at the scheduling conference.  On February 28, 2006, I entered an Order to Show Cause directing plaintiffs to show cause why the plaintiffs' action should not be dismissed for failure to prosecute, to which plaintiffs responded on March 15, 2006.  In their prolix response, plaintiffs argued that they were ill, otherwise working on documents related

---

[1]According to the plaintiffs' Motion for Order to Serve Process by U.S. Marshal, filed June 21, 2005 [doc. #5], plaintiffs paid the filing fee for their complaint under the mistaken assumption that they would not be able to timely file their complaint if they moved to proceed *in forma pauperis*.

to their case, or should be given special consideration or deference because they are not represented by counsel[2].

Plaintiffs allege that defendants discriminated against plaintiffs because of their race, color, national origin, and disability.  In their "factual allegations"  plaintiff Corazon Fox states that she is a Filipino-American born in the Phillippines, and that her adult son Johnearl, a Filipino-American born in the U.S., began attending free nutritional lectures at the Green Mountain Vitamin Cottage store in February 2003.  AC ¶ 2 at 3. The plaintiffs complain that "while shopping in the store, the plaintiffs would be followed around by the store employees in a conspicuous manner."  AC ¶3 at 3.  Plaintiffs contend that the Green Mountain store manager, Tim King, approached Corazon Fox "on several occasions" and would physically grab either her hand bag/purse, her traveling shopping cart, or her wheeled luggage depending at what she had with her at the time while he told her 'you cannot have this inside the store.'" AC ¶ 4 at 4.  As a result, plaintiffs continued to visit the Green Mountain store for lectures, but preferred to shop at the Leetsdale Vitamin Cottage store.  AC ¶ 6 at 4.

On October 8, 2003, plaintiff Johnearl Fox attended a free lecture at the Green Mountain store.  While shopping at the store after the lecture, Tim King told Mr. Fox to leave the store and not to return again.  When Mr. Fox asked for an explanation, defendant King replied that "if you don't leave, I will call the police and have you escorted out of the building."  AC ¶ 8 at 5.  When the police arrived, a friend of Mr. Fox's arrived at the same time to give Mr. Fox a ride home.  AC ¶ 9 at 5.   In response

---

[2]Plaintiffs' request for the appointment of counsel was denied.  See Doc. # 81.  Plaintiffs' appeal of the order denying counsel was dismissed.  See Doc. # 97.

to the police officer's comment to Mr. Fox that "apparently some items have gone missing when you and your mother have been in the store," Mr. Fox denied any wrongdoing on his part and any wrongdoing on his mother's part, although his mother was not present that evening.  AC ¶ 9 at 6.  The police officer told Mr. Fox that, if he returned to the store, he would be fined for trespassing.  AC ¶ 13 at 6.

After the October 8, 2003 incident, plaintiffs continued to shop at the Leetsdale Vitamin Cottage store.  Plaintiffs allege they had difficulties having requested items put on hold for them and further allege that an unidentified store employee asked Mr. Fox, in reference to an unidentified product he was examining, "is it too expensive for you?" AC ¶ 15 at 7.  Plaintiffs wrote to Kemper Isely, one of the co-presidents of Vitamin Cottage Natural Food Markets, Inc., complaining about the October 8, 2003 events at the Green Mountain Vitamin Cottage store.  See Amended Compl., Ex. 1.  Thereafter, plaintiffs filed a complaint with the Colorado Civil Rights Division (CCRD).  See original complaint filed May 26, 2005 and attachments.  In a February 25, 2005 determination letter, which is attached to the original May 26, 2005 complaint, the CCRD found insufficient evidence to support the plaintiffs' charges of discrimination[3]  against Vitamin Cottage Natural Food Markets, Inc.

## II. Rule 12(b)(6) Standard

In reviewing the sufficiency of plaintiff's allegations under Fed.R.Civ.P. 12(b)(6), the court accepts the plaintiff's well-pleaded factual allegations as true and resolves all reasonable inferences in plaintiff's favor.  *See Miller v. Glanz*, 948 F.2d 1562, 1565

---

[3]There were two separate charges filed by the plaintiffs with the Colorado Civil Rights Division based on the same series of events described in the complaint, amended complaint, and exhibits thereto: No. P2004DR011 (by Corazon Fox) and No. P2004DR012 (by Johnearl Fox).

(10th Cir. 1991).  Dismissal is appropriate only if  "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also, Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 586 (10th Cir. 1994); *Miller*, 948 F.2d at 1565. When reviewing the sufficiency of a complaint, the issue is not whether plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

*Pro se* pleadings are to be construed liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  A *pro se* litigant should be given a reasonable opportunity to remedy defects in his  pleadings if his factual allegations are close to stating a claim for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be granted."  *Id.*   The court will not construct legal theories which assume facts that have not been pleaded, *see Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), nor is the court obligated to "supply additional factual allegations to round out a plaintiff's complaint."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)

### III. Analysis

A. Plaintiffs' First Claim for Relief for Violations of 42 U.S.C. §§1981, 1983, 1985, and 2000a Against  all Defendants.

1. 42 U.S.C. §1981 Claim

A Section 1981 claim is based upon a federal statute that traces its origins to section 1 of the Civil Rights Act of 1866, 14 Stat. 27 (1866). Codified at 42 U.S.C. §1981, the statute prohibits both public and private racial discrimination in certain

specified activities, including the making and enforcement of contracts. *Runyon v. McCrary*, 427 U.S. 160, 168-75 (1976).  There are four protected interests under Section 1981: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir.1989).  Plaintiffs claim discrimination in their dealings with Vitamin Cottage.  Defendants move for dismissal, arguing that plaintiffs have failed to allege that defendants' discrimination interfered with a protected activity.

The United States Court of Appeals for the Tenth Circuit has set forth the test for a prima facie case of §1981 discrimination in retail transactions.   The plaintiffs must show that  (1) they are members of a protected class; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981.  *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101 (10th Cir. 2001), cert. denied, 534 U.S. 1131 (2002).  Further, in order to state a claim under the contract clause of § 1981, a plaintiff must identify the actual loss of a contract.  *Phelps*, 886 F.3d at 1267.

In *Hampton*, the Tenth Circuit held that a woman of African-American descent who allegedly had been ejected from a store on the basis of her race could not pursue a § 1981 claim because she had neither attempted nor planned to make any specific purchase (and, accordingly, could not prove any interference with a contractual relationship).  247 F.3d at 1117-18.  The court emphasized that "the mere expectation of being treated without discrimination while shopping "will not support a claim under

§ 1981." *Id.* at 1118.  In contrast, the *Hampton* court upheld a judgment for another plaintiff African-American woman, who was attempting to redeem a coupon that she had received incidental to a previous purchase, when she was ejected from the store at the same time as the first woman.  *Id.* at 1103-05.  The court concluded that the coupon was tantamount to an option contract, and that the store could be held liable for its race-based denial of the right to redeem it.  *Id.* at 1104.  I recommend finding that the distinction the Circuit drew between the two plaintiffs demonstrates the need for a contractual nexus in a suit under 42 U.S.C. § 1981 for discrimination in retail transactions.

Here, the Foxes do not allege the actual loss of a contract, but they refer to deprivation of their "shopping rights and future lecture attendance benefits, unfettered access to store entrances and exits . . . the right to shop and learn in an environment not subject to harassment, stalking public embarrassment, and other discriminatory treatment."  AC ¶40 at12.  Unfortunately for Ms. Fox and Mr. Fox, they do not allege in their amended complaint that Mr. Fox attempted to purchase any item on October 8, 2003, nor is there any allegation that any defendant prevented any attempted purchases.  Further, while the Foxes do allege that they were treated differently by store employees, I recommend finding that disparate treatment alone is not actionable under § 1981.[4]  I further recommend finding that the deprivations complained of do not

_____

[4]See, e.g., *Morris v. Dillard Dep't Stores*,  277 F.3d 743, 746 (5th Cir. 2001), where an African-American woman browsed in a department store without making any purchases.  She was subsequently accused of shoplifting, was arrested, and was temporarily banned from returning to the store. *Id.* at 746-47, 751. The woman brought suit under § 1981, claiming that the banishment amounted to a race-based deprivation of a contractual interest. *Id.* at 751. The Fifth Circuit rejected her § 1981 claim because she did not "offer evidence of some tangible attempt to contract with [the defendant's store] during the course of the ban, which could give rise to a contractual duty between her and the merchant," and concluding that the facts were "too speculative to establish loss of any actual contract interest owed to her by [the defendant]." *Id.* at 753.

state a claim under Section 1981.  Accordingly, plaintiffs have failed to state a claim for

violation of § 1981, and I recommend that the §1981 claim be dismissed[5].

　　　　　2. 42 U.S.C. §1983 Claim

Defendants move for dismissal of the §1983 claim for the failure to allege that

state actors were involved in any deprivation of rights.  In order to survive a Rule

12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege "(1) a violation of

rights protected by the federal Constitution or created by federal statute or regulation,

(2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any

statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the

District of Columbia."  *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)

(internal quotation omitted).  The only proper defendants in a § 1983 claim therefore

are those who act under color of state law,  whether they act in accordance with their

authority or misuse it.  *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179,

191 (1988).  "The ultimate issue in determining whether a person is subject to suit

under § 1983 is whether the alleged infringement of federal rights is 'fairly attributable

to the state.'"  *Tarabishi v. McAlester Reg'l Hosp.*, 827 F.2d 648, 651 (10th Cir. 1987).

Here, plaintiffs allege that defendants "denied plaintiffs the opportunities and

privileges given to other similarly situated white persons including but not limited to,

shopping rights and future lecture attendance benefits, unfettered access to store

entrances and exits, the right to secure personal belongings such as purse and bag,

the right to shop and learn in an environment not subject to harassment, stalking, public

_____

[5]Because I recommend dismissal of the §1981 claim on these grounds, I do not address defendants' argument that plaintiffs' §1981 claim should be dismissed because they have not stated that defendants' alleged discrimination interfered with any protected activity.

embarrassment, and other discriminatory treatment." AC ¶ 40 at12.   The Foxes do not, however, state in their amended complaint that any of the "rights" they claim were violated are federal or constitutional rights, nor do they contend that any defendant acted under color of state law.   Having thus failed to set forth facts in support of the elements of a Section 1983 claim in their amended complaint, I recommend that plaintiffs' Section 1983 claims be dismissed.  See *Whitney*, 113 F.3d at 1173-74.

3. 42 U.S.C §1985 Conspiracy Claim

42 U.S.C. § 1985 proscribes any conspiracy to:  (1) prevent an officer from performing duties; (2) obstruct justice, or intimidate a party, witness or juror; and (3) deprive persons of rights or privileges.  Defendants move to dismiss this claim for plaintiffs' failure to allege a conspiracy and their failure to allege that they were deprived of equal protection or equal privileges and immunities.

Plaintiffs did not specify which clause of §1985 applies to their claims in their amended complaint; instead, they stated only that they are members "of a protected class under sections 1981, 1983, 1985, and 2000a,"  AC ¶ 39 at 12, and that "defendants collaborated their efforts to subject plaintiffs to this treatment and published misleading and untrue statement that falsely represent the plaintiffs' motives in a conspiracy to shift blame and justify inappropriate actions committed by defendants." AC ¶ 41 at 12.

Based on my reading of the amended complaint, I recommend finding that the only section of §1985 which arguably applies to plaintiffs' claims is §1985(3).  Section 1985(3) specifically prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the

9

laws, or of equal privileges and immunities under the laws . . ." 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must show: (1) a conspiracy, motivated by racially discriminatory animus; (2) to deprive plaintiff of equal protection of the constitution or laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.1993).  A plaintiff first must state facts to demonstrate that there is a conspiracy, which is defined as "the combination of two or more persons acting in concert," *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990), so that a plaintiff therefore must allege "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." *Id.* at 1231.

There is nothing of the kind stated in the amended complaint.  Attached to the amended complaint are a letter from defendant Isely and letters from three employees of the Green Mountain Vitamin Cottage.   See Amended Compl., Ex. 8.  The CCRD's determination letters are attached to the original complaint.  A review of Exhibit 8 and the CCRD determination letter indicates that plaintiffs initially were barred from returning to the Green Mountain Vitamin Cottage as a result of their odd behavior, which store employees interpreted as possible shoplifting.  The possibility that store employees and other Vitamin Cottage personnel may have agreed that plaintiffs' behavior in the store was odd, however, does not equate to a conspiracy to deprive plaintiffs of any civil rights.

Moreover, section 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."

*Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971); *accord, Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) ("in the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985).

I recommend finding that the Foxes have not alleged any form of conspiracy or any meeting of the minds; they have not complained of any racially discriminatory animus on the part of any defendant; and, they have not set forth any facts alleging any act in furtherance of a conspiracy nor have they stated what rights were violated as a result of the alleged conspiracy.  Accordingly, for plaintiffs' failure to state facts to support the elements of a Section 1985(3) conspiracy claim in their amended complaint, see *Whitney*, 113 F.3d at 1173-74, I recommend dismissal of the Section 1985 conspiracy claim.

### 4. 42 U.S.C. § 2000a Claims

The Civil Rights Act of 1964 (Act) entitles all persons "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation [as defined by Title II of this section]." 42 U.S.C. § 2000a (2004).  Retail stores, food markets, and similar establishments were excluded from the Act for the policy reason that there was little, if any, discrimination in their operation.  *Newman v. Piggie Park Enterprises, Inc.*, 377 F.2d 433, 436 (4th Cir. 1967) *modified on other grounds*, 390 U.S. 400 (1968).  If retail outlets provide entertainment or a food counter on their premises, however, they then may be considered places of public accommodation for purposes of the Civil Rights Act

of 1964 [6].

Plaintiffs cite the statute as part of their first claim, and also as the basis for their seventh claim for intervention by the attorney general.   Plaintiffs have not, however, set forth any facts which would support a Section 2000a claim, including any statement that Vitamin Cottage was a place of public accommodation under the Act.  Because 42 U.S.C. §2000a only applies where the facility in question is a place of public accommodation, and because plaintiffs have not alleged any facts which would lead to a finding that Vitamin Cottage is a place of public accommodation subject to the Civil Rights Act of 1964, or which would otherwise implicate Section 2000a, I recommend dismissal of the §2000a section of plaintiffs' first claim as well as dismissal of plaintiffs' seventh claim for relief.

B.  Second Claim for Relief- Violation of 42 U.S.C. § 1986

Plaintiffs assert this claim against defendants Vitamin Cottage, Kemper Isely and Heather Isely only.  Defendants move to dismiss for the failure to correctly allege a Section 1986 claim.

Title 42 U.S.C. § 1986, "which provides an action for neglecting to prevent a violation of § 1985, is premised upon the existence of a valid § 1985 claim." *Abercrombie*, 896 F.2d at 1230.  Consequently, since I have recommended dismissal of plaintiffs' claims under 42 U.S.C. § 1985 for the failure to state a claim for relief, I also recommend dismissal of any dependent claim brought under 42 U.S.C. § 1986.

C. Third Claim - Violation of the ADA, 42 U.S.C. §12182

---

[6] See e.g., *U.S. v. Baird*, 85 F.3d 450 (9th Cir. 1996) (retail convenience store with two video game machines was "public accommodation"); and see *Halton v. Great Clips, Inc.*, 94 F.Supp.2d 2000 (N.D. Ohio 2000) (hair salon was not a place of "public accommodation")

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation.  Specifically,  42 U.S.C. §12182(a) provides that: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA provides a private right of action for preventive relief, including an application for a permanent or temporary injunction or restraining order for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III.   *Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership*, 264 F.3d 999, 1001-02 (10th Cir. 2001).

The first element of an ADA failure to publically accommodate claim under Title III is that the discrimination be on the basis of the disability or disorder.  The ADA defines "disability" to include "a mental impairment that substantially limits one or more . . . major life activities . . . " 42 U.S.C. § 12102(2)(A); *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1081 (10th Cir. 1997).  The Equal Employment Opportunity Commission ("EEOC"), pursuant to its statutory authority to issue regulations to carry out the ADA, 42 U.S.C. § 12116,  has further refined the definition of "disability" to mean "any mental or psychological disorder, such as . . . emotional or mental illness." 29 C.F.R. § 1630.2(h).

Plaintiffs allege that Corazon Fox suffers from post-traumatic stress disorder (PTSD) and that defendants discriminated against her on that basis.  Defendants move to dismiss the ADA claim because Vitamin Cottage is not a "place of public

accommodation," and I agree.

While plaintiffs may have alleged that Corazon Fox has a "disability," they have failed to allege further that Vitamin Cottage is a place of public accommodation and they have failed to state any facts to support a claim that Ms. Fox was denied full and equal service in a place of public accommodation "on the basis of [her] disability." Even though Kemper Isely may have written to Ms. that "Corazon Fox is welcome to attend the public lectures as long as her behavior while attending these lectures is similar to other patrons, " see amended compl., Ex. 5, and even if defendant Vitamin Cottage suspected that Mr. Fox was shoplifting when he came into the store, those statements are not adequate to show that any defendant was aware of any alleged disability attributable to Ms. Fox and are not adequate to support a claim of discrimination on the basis of disability.  I therefore recommend that Corazon Fox's claim for violation of the ADA be dismissed.

D. Remaining Claims in the Amended Complaint

*Defamation*

Plaintiffs assert a tort claim for defamation under Colorado law.  See amended compl., 4th Claim.  Plaintiffs argue that the written information defendants submitted to the CCRD in connection with the plaintiffs' CCRD charges of discrimination (exhibit 8 to the AC) is defamatory and in violation of §18-13-105, Colo. Rev. Stat.  Defendants move to dismiss the claim for plaintiffs' lack of standing.

§18-13-105 is a part of Colorado's Criminal Code.  It concerns criminal libel and states that  "[a] person who shall knowingly publish or disseminate, either by written instrument, sign, pictures, or the like, any statement or object tending to blacken the

memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation or expose the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule, commits criminal libel." §18-13-105, Colo. Rev. Stat.

The criminal libel statute plaintiffs cite does not provide for a private right of action.  See  *Cort v. Ash*, 422 U.S. 66, 80 (1975)(no private right of action from a bare criminal statute).  Further, a private right of action does not exist for all injuries caused by violations of criminal prohibitions.  See, e.g., *Gammill v. United States*, 727 F.2d 950,  952 (10th Cir. 1984)(no private right of action based upon Colorado criminal statute).    Because there is no private right of action and because plaintiffs therefore do not have standing to maintain their defamation claim under §18-13-105, I recommend that the claim premised upon §18-13-105 be dismissed.

Plaintiffs also may be attempting to state a claim for defamation under Colorado common law based on defendants' statements to the CCRD.  That claim also fails because any person participating in good faith and acting in "the reasonable belief that the action taken by him was warranted by the facts " in a CCRD investigation is immune from liability in any civil action.  See Colorado Anti-Discrimination Act at §24-34-306(13), Colo. Rev.Stat. 2005.

Defendants here were required to respond to the CCRD's questioning and are entitled to statutory immunity under the Colorado Anti-Discrimination Act as a result. Plaintiffs have not stated in their amended complaint that defendants did not act in good faith or did not act in a reasonable manner within the meaning of §24-34-306(13). Accordingly, §24-34-306(13) applies to give defendants immunity.  Plaintiffs' common law claim of defamation, if any,  should be dismissed.

*Obstruction of Justice*

The plaintiffs' fifth claim for relief is premised upon another criminal statute.

Defendants move to dismiss the fifth claim because  plaintiffs lack standing.

The statute plaintiffs rely upon states:

Obstruction of proceedings before departments, agencies, and committees.
§ 1505. Obstruction of proceedings before departments, agencies, and committees
Whoever, with intent to avoid, evade, prevent, or obstruct compliance, in whole or in part, with any civil investigative demand duly and properly made under the Antitrust Civil Process Act, willfully withholds, misrepresents, removes from any place, conceals, covers up, destroys, mutilates, alters, or by other means falsifies any documentary material, answers to written interrogatories, or oral testimony, which is the subject of such demand; or attempts to do so or solicits another to do so; or Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress--
Shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both.

18 U.S.C.A. §1505 (2004)

The Supreme Court has held that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Rather, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Here, the statute is clear in that it provides only for criminal, and not civil,  penalties; I accordingly recommend

finding that there is no private right of action under 15 U.S.C. §1505, and that plaintiffs'

fifth claim should be dismissed for plaintiffs' lack of standing.

   *Outrageous Conduct*

   Under Colorado law, the elements of outrageous conduct are that: (1) the

defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent

of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe

emotional distress.  *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *McCarty*

*v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo.App.2000).  Mere insults, indignities,

threats, annoyances, petty oppressions, or other trivialities are insufficient.  Only

conduct that is so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency and be regarded as atrocious and utterly intolerable in

a civilized community, will suffice.  *Bob Blake Builders, Inc. v. Gramling*, 18 P.3d 859,

866 (Colo. App. 2001); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350

(Colo.1988) (facts must so arouse resentment against the defendant in average

members of the community as to lead them to exclaim, "outrageous!").

   Plaintiffs here do not state any facts in support of a claim for outrageous conduct

in their amended complaint.  Moreover, the conduct plaintiffs complain of, even if stated

accurately, does not rise to the level required for stating a claim of outrageous conduct.

Accordingly, I recommend that the outrageous conduct portion of the plaintiffs' seventh

claim be dismissed.   See *Whitney*, 113 F.2d at 1173-74.

   E.  Defendants' claim for attorney fees and costs

   In their motion to dismiss, defendants ask for an order allowing them to apply for

attorney fees and costs.  Defendants have not presented the court with any authority

which would permit the award of attorney fees under the circumstances of this case. Accordingly, the attorney fees request will be denied.   Costs however should be allowed to the prevailing party.

### IV. Recommendations

**For the reasons stated, it is hereby**

**RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ.P. 12(b)(6), filed December 19, 2005, Doc. # 64 be **granted in its entirety**; it is further

**RECOMMENDED** that Defendants' Motion to Dismiss Plaintiffs' Complaint Without Prejudice Pursuant to Fed.R. Civ.P. 4(m), filed October 17, 2005, Doc. # 39, be **denied as mooted** by the recommended dismissal of the complaint on its merits; it is further

**RECOMMENDED** that defendants' request for attorney fees be **denied**; it is further

**RECOMMENDED** that this action be **dismissed in its entirety with prejudice**; and, it is further

**RECOMMENDED** that defendants be awarded their costs**.**

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district court judge shall make a determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or**

**recommendations made by the magistrate judge.  The judge may also receive**

**further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may**

**result in a waiver of the right to appeal from a judgment of the district court**

Dated this 22nd day of June, 2006.

BY THE COURT:

 /s Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge